David E. PAPENDICK, M.D., Plaintiff,

v.

Otis BOWEN, M.D., In his official capacity as Secretary of the United States Department of Health & Human Services; Richard P. Kusserow, In his official capacity as Inspector General of the United States Department of Health & Human Services; and Wisconsin Peer Review Organization, Defendants.

No. 87–C–81–S.

United States District Court,
W.D. Wisconsin.

April 28, 1987.

Jeff Scott Olson, Julian & Olson, Madison, Wis., for plaintiff.

David C. Sarnacki, Asst. U.S. Atty., Alvin N. Jaffe, Asst. Reg. Counsel, Department of Health and Human Services, of Counsel, Rebecca A. Erhardt, Boardman, Suhr etc., Madison, Wis., for defendants.

ORDER

SHABAZ, District Judge.

Plaintiff David Papendick commenced this action for injunctive and declaratory relief against the Secretary of Health and Human Services Otis Bowen, the Inspector General of Health and Human Services Richard Kusserow, and the Wisconsin Peer Review Organization. Plaintiff contends that the defendants' actions terminating his authorization to receive reimbursement for treating Medicare patients have violated his due process rights.

Defendants Bowen and Kusserow have moved for summary judgment. They contend that this Court does not have subject matter jurisdiction because plaintiff has not exhausted his administrative remedies. Defendant Wisconsin Peer Review Organization has moved to dismiss plaintiff's complaint, contending that there is no justiciable case or controversy.

FACTS

Plaintiff David Papendick is a Wisconsin resident who has been engaged in the general practice of medicine in Algoma, Wisconsin since 1962. Defendant Otis Bowen is the Secretary of the United States Department of Health & Human Services. Defendant Richard Kusserow is the Inspector General in charge of the Office of the Inspector General (OIG) within the Department of Health & Human Services. Defendant Wisconsin Peer Review Organization (WiPRO) is a Wisconsin corporation to which the Secretary has delegated responsibility to review the treatment of Medicare cases by Wisconsin physicians. WiPRO has its principal headquarters in Madison, Wisconsin.

Plaintiff became eligible to be reimbursed by the government for the medical expenses of persons eligible for Medicare benefits when the Medicare program began in 1965. Since that time plaintiff has treated many such patients. Over the last five years Medicare payments have constituted more than half of the gross income of plaintiff's practice. Over the last five years the gross income of plaintiff's medical practice has averaged approximately $600,000 annually. Most of that amount has paid employee's salaries and overhead expenses. Plaintiff's personal net income over the last five years has fluctuated between approximately $120,000 and approximately $200,000 per year.

On May 22, 1986, plaintiff received a letter from WiPRO that stated as follows:

WIPRO has reviewed medical records pertaining to your medical practice. As a result of this review, WIPRO has iden-

tified three cases in your medical practice in which it has initially determined are gross and flagrant violations of the obligations under Section 1156 of the Social Security Act. WIPRO has also determined that you had control (influence or authority) over the services or items which were improperly or inappropriately ordered or furnished in these cases.

A copy of each of the medical records used by WIPRO in arriving at this determination is enclosed. Also enclosed is a synopsis of each of the cases which are supported by the enclosed medical records. Each synopsis identifies each case reviewed by WIPRO, the issues raised by WIPRO and the conclusion by WIPRO. WIPRO will follow the procedure outlined in Transmittal # 6 in the further resolution of this matter; a copy of this Transmittal is enclosed with this letter for your review and reference.

It has also been determined that the violations of your obligations under Section 1156 of the Social Security Act are serious enough to warrant recommending to the Department of Health and Human Services that sanctions be imposed on you pursuant to Federal statute and regulations. The sanction to be recommended is exclusion from participation in the Medicare program for a period of twelve (12) years.

By this letter you are hereby formally invited to submit to WIPRO within thirty (30) days of your receipt of this letter, additional information which you feel might modify its position and/or a written request to meet with WIPRO staff and physicians to review and discuss WI-PRO's determination in this matter.

Transmittal # 6 required the WiPRO to send plaintiff, in conjunction with its initial determination letter, a copy of the material used in arriving at its determination. Wi-PRO, however, did not send plaintiff copies of the written reports prepared by the doctors who initially reviewed the medical records of the three patients whose care was the subject of the sanction recommendation.

Plaintiff responded to the initial determination letter by sending a lengthy letter to WiPRO, in which he explained some of the decisions he had made in the care of the three patients identified by WiPRO. On June 25, 1986, plaintiff told Michael Rode, Regional Manager of WiPRO, that he did not wish to meet with the Regional Review Committee of WiPRO concerning the initial determination. Rather, plaintiff asked that in lieu of appearance, the Committee review the written materials he had mailed and the tape recordings of meetings he had with the Northeast District Review Council of WiPRO's predecessor, WisPRO. These tape recordings did not deal with the three cases WiPRO had identified.

On August 26, 1986, WiPRO sent plaintiff a letter stating that it had submitted a recommendation to the OIG and the Secretary that plaintiff be excluded from participation in the Medicare program for 12 years. The letter also erroneously stated that plaintiff could submit additional information to the OIG "within 30 days of the date of this letter." The letter should have stated, according to Transmittal # 6, that plaintiff had "30 days from the date of receipt of this final notice to submit any information to the OIG."

After plaintiff retained an attorney, his attorney became aware of WiPRO's August 26, 1986 letter. In an October 4, 1986 letter to OIG, plaintiff's attorney stated, when sending additional information to the OIG, that:

> Dr. Papendick also received his copy of the August 26, 1986 letter ... on September 4, 1986. By the terms of transmittal number 6 of the Peer Review Organization Manual, any additional submissions on behalf of Dr. Papendick are due 30 days after his receipt of WIPRO's recommendation for sanctions. We are transmitting, under cover of this letter, such additional submissions on Dr. Papendick's behalf, by Federal Express Zap Mail, which guarantees same-day delivery, on October 4, 1986, so that they reach you on the thirtieth day after Dr. Papendick's receipt of WIPRO's recommendation.

On December 23, 1986, the OIG issued its decision. The decision stated:

After a careful review of all the evidence of record, and acting on the authority delegated to me by the Inspector General of the Department of Health and Human Services, I have determined that I agree with the conclusion of the PRO that in the case numbers cited above you grossly and flagrantly violated your obligations under section 1156.

I have also determined that you have demonstrated a lack of ability substantially to comply with the obligations imposed on you by section 1156(a) of the Social Security Act. This is evidenced by your failure to recognize the danger in your failure to obtain appropriate and timely consultations, as well as the use of multiple drugs in the treatment of cardiac arrhythmias and your failure to transfer a patient to a tertiary care facility in a timely manner.

On the basis of my agreement with the PRO's conclusion in two cases that you have failed to comply with your obligations under section 1156(a) and my determination that you have demonstrated an unwillingness or lack of ability substantially to comply with these obligations, all items and services ordered or furnished by you will be excluded from reimbursement under the Medicare program for a period of 2 years.

\*    \*    \*    \*    \*    \*

... This exclusion will be effective 15 days from the date of receipt of this letter.... As of that date, Medicare will no longer make payment for items or services ordered or furnished by you. As specified in 42 CFR 1004.100(d), we will place a notice in a local newspaper to advise the community of the effective date, the duration, and the reason for this exclusion.

After the OIG's decision, plaintiff requested a full due process hearing before an administrative law judge. The Court is of the opinion that plaintiff will probably have endured approximately one-fourth of the full exclusion imposed upon him by the time he receives the ALJ's decision.

## ADMINISTRATIVE PROCEDURES

Under the Social Security Act, health care practitioners have an obligation to as-

sure that items and services ordered or provided to beneficiaries (1) will be provided economically and only when and, to the extent, medically necessary; (2) will be of a quality which meets professionally recognized standards of health care; and (3) will be supported by evidence of medical necessity and quality. 42 U.S.C. § 1320c–5(a).

In order to ensure that health care practitioners meet the obligations of 42 U.S.C. § 1320c–5(a), Congress has enacted a system of medical peer review. Peer review is conducted by utilization and quality control peer review organizations (PRO) which contract with the Secretary of Health and Human Services to service a particular geographic area. 42 U.S.C. § 1320c–2. A PRO is an entity which is either "composed of a substantial number of the licensed doctors of medicine and osteopathy engaged in the practice of medicine or surgery in the area" or "has available to it ... the services of a sufficient number of licensed doctors of medicine or osteopathy engaged in the practice of medicine or surgery in such area ..." 42 U.S.C. § 1320c–1(1)(A). Each contract with a PRO is for an initial term of two years and is renewable on a biennial basis thereafter. 24 U.S.C. § 1320c–2(c)(3).

The PRO for a particular area has responsibility for reviewing the professional activities of physicians and other health care practitioners relating to their provision of services to Medicare beneficiaries. 42 U.S.C. § 1320c–3(a)(1). The PRO determines whether items and services rendered were reasonably and medically necessary; whether the quality of such services meets professionally recognized standards of health care; and, where such services and items were to be provided in a hospital on an inpatient basis, whether the services and items could be effectively provided more economically on an out-patient basis or in an inpatient health care facility of a different type. 42 U.S.C. § 1320c–3(a)(1).

If the PRO determines that a health care practitioner has violated his or her statutory obligations, the PRO must determine whether the violation was a gross and flagrant violation. 42 C.F.R. § 1004.40. If

the PRO determines that the violation is a gross and flagrant one, the PRO must give the practitioner written notice setting out this determination, the basis for it, and the sanction that will be recommended. *Id.;* 42 C.F.R. § 1004.50. The notice must also provide that the practitioner has a right to submit additional information or a request for a meeting with the PRO within 30 days. A copy of the material used by the PRO in this preliminary determination is to be provided to the practitioner. *Id.*

Following review of the information provided by the practitioner in writing or at the meeting, the PRO makes a determination whether the practitioner has violated his or her obligation. *Id.* If the PRO determines that there has been a gross and flagrant violation, the PRO must submit a report and recommendation of sanction to the Office of the Inspector General of the Department of Health and Human Services (OIG). 42 C.F.R. § 1004.70. In recommending a sanction, the PRO should consider the type of offense, its severity, the deterrent value of the sanction, and availability of alternative health care services in the community. 42 C.F.R. § 1004.80. A copy of the PRO report sent to the OIG must also be sent to the affected practitioner along with a notice informing him or her that the recommendation has been submitted and that he or she has 30 days to submit any additional material to the OIG. 42 C.F.R. § 1004.60(b)(1), (2).

Once the OIG receives the PRO's report and recommendation, the OIG must review the report and recommendation to determine whether (1) the PRO is following its procedure; (2) a violation has occurred; and (3) the practitioner has demonstrated an unwillingness or lack of ability to substantially comply with his or her obligation. 42 C.F.R. § 1004.90. If the OIG agrees that a practitioner has violated his or her obligations, the OIG must decide upon an appropriate sanction. In deciding upon a sanction, the OIG considers (1) the PRO's recommendation; (2) the type of offense; (3) the severity of the offense; (4) the previous sanction record of the practitioner; (5) the availability of alternative health care sources in the community; (6) any prior problems Medicare has had with the practitioner; (7) whether the practitioner is unable or unwilling to comply substantially with the obligations; and (8) any other relevant matters. 42 C.F.R. § 1004.90(d).

Once the OIG decides on a sanction, the OIG must give notice to the practitioner of the type of sanction to be imposed. 42 C.F.R. § 1004.100. The sanction is effective 15 days from receipt of the notice. 42 C.F.R. § 1004.100(b). The OIG notifies the public of the sanction by a notice in a newspaper of general circulation. 42 C.F.R. § 1004.100(d).

If a practitioner is dissatisfied with the OIG's determination and sanction, the practitioner may request an evidentiary hearing before an administrative law judge. 42 C.F.R. § 1004.130(a)(1). At this hearing the practitioner is entitled to call witnesses under oath, to cross-examine all witnesses, to submit documents, briefs and oral argument. 42 C.F.R. §§ 405.1547, 405.1548. The ALJ's decision after this hearing is appealable to the Departmental Appeals Council. 42 C.F.R. § 405.1561. The Appeals Council's decision is the final agency action. If the practitioner is dissatisfied with the Secretary's final decision, the practitioner may appeal the decision to the district court. 42 U.S.C. §§ 1320–c–5(b)(4), 405(g).

## OPINION

Plaintiff claims that defendants' actions terminating his authorization to receive Medicare reimbursement have violated his due process rights in three ways. First, plaintiff contends that his due process rights were violated because WiPRO was a biased decision-maker. Second, plaintiff contends that his rights were violated because WiPRO did not follow the required procedures. Specifically, plaintiff alleges that WiPRO did not give him all the information upon which WiPRO based its decision and that WiPRO failed to inform him of his right to submit additional information to OIG within 30 days of the date of *receipt* of WiPRO's letter. Third, plaintiff contends that his due process rights were violated because he was not given a full

evidentiary hearing prior to the termination of his Medicare authorization.

Defendants Bowen and Kusserow move to dismiss plaintiff's complaint on summary judgment. Defendants contend that this Court does not have subject matter jurisdiction because plaintiff has not exhausted his administrative remedies as required by 42 U.S.C. § 405(g). Defendant WiPRO has moved to dismiss plaintiff's claim because there is no case or controversy. The Court will first address the motion for summary judgment of defendants Bowen and Kusserow.

Under 42 U.S.C. § 405(g), a court may review only the Secretary's final decisions. The Supreme Court has stated that the final decision requirement of § 405(g) consists of two elements: a waivable element and a non-waivable element.

> The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary.

*Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).

The exhaustion requirement may be waived by the Secretary or may be waived by the Court in cases where a party's interest "in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* at 330, 96 S.Ct. at 900. The exhaustion requirement may be waived by the Court if three prerequisites are met. The first prerequisite is that the plaintiff raise fundamental constitutional issues challenging a denial of constitutional rights collateral to the claim for federal benefits. *Id.* at 330–31, 96 S.Ct. at 900. The second prerequisite is that the plaintiff would be irreparably injured if the exhaustion requirement were enforced against the plaintiff. *Id.* at 331, 96 S.Ct. at 900. The third prerequisite is that the purposes of the exhaustion requirement would not be served by requiring plaintiff to exhaust administrative remedies. *Bowen v. City of New York*, —— U.S. ——, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986).

■ This Court must now apply these principles to determine if it has jurisdiction of this case pursuant to 42 U.S.C. § 405(g). The Court finds that plaintiff has presented his claim for continued Medicare reimbursement to the Secretary, and therefore the nonwaivable requirement has been met. The Court further finds that plaintiff has not exhausted his administrative remedies because he has not received a final decision from the Secretary. The Court must now determine whether the exhaustion requirement should be waived by the Court in this case.

In determining whether the exhaustion requirement should be waived, the first issue this Court must examine is whether plaintiff raises (1) a constitutional claim challenging a denial of constitutional rights that is (2) colorable, and that is (3) collateral to the claim for federal benefits. The Court believes that it can easily find that plaintiff has raised a constitutional claim. Plaintiff claims that the sanctioning procedures used in his case denied him due process. A due process claim is clearly a constitutional claim.

Next, the Court must determine whether the constitutional claim is colorable. The Court must examine the merits of plaintiff's claim in order to determine whether the claim sets forth a "colorable" claim. *Koerpel v. Heckler*, 797 F.2d 858, 863 (10th Cir.1986); *Boettcher v. Secretary of Health & Human Services*, 759 F.2d 719, 722 (9th Cir.1985); *Northlake Community Hospital v. United States*, 654 F.2d 1234, 1241 (7th Cir.1981). An examination of the merits of plaintiff's due process claim requires an examination of plaintiff's underlying liberty or property interests, and the process that plaintiff was afforded.

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court discussed when a person may have a property interest. The Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation

of it. He must, instead, have a legitimate claim of entitlement to it....

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709.

Plaintiff contends that he has a vested property interest in his status as a doctor authorized to treat and receive reimbursement for treating Medicare patients. Plaintiff contends that this property interest arises because after a physician becomes authorized to receive Medicare funds for the treatment of eligible patients, the Secretary can revoke such authorization only for cause. 42 U.S.C. § 1395cc(b)(2). This Court agrees that a physician, once he becomes authorized to receive Medicare funds for the treatment of eligible patients, has a property interest in continued authorization as long as he does not commit one of the actions set forth in 42 U.S.C. § 1395cc(b)(2). Accordingly, this Court finds that plaintiff has a property interest in continued authorization to receive Medicare funds for the treatment of eligible patients.

Plaintiff also contends that he has a fundamental liberty interest in his personal and professional reputation. The Supreme Court has stated in *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) that reputational damage alone, no matter how egregious, is insufficient to support a claim of property or liberty deprivation. The Supreme Court stated that some other tangible interest, such as employment, must also be involved. *Id.* This Court believes that plaintiff's property interest in continued authorization for Medicare reimbursement along with plaintiff's interest in his personal and professional reputation are sufficient to provide plaintiff with a liberty interest in those items.

■ Since plaintiff had a protectible property and liberty interest in his authorization to treat Medicare patients, the government cannot deprive plaintiff of that interest without due process. *Mathews v. Eldridge,* 424 U.S. at 332, 96 S.Ct. at 901. In determining what process is due, the Court must consider (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedure employed, and the probable value of additional procedural safeguards, such as a hearing, and (3) the government's interest, including the fiscal and administrative burdens additional process would create. *Id.* at 335, 96 S.Ct. at 903.

With respect to plaintiff's interests, plaintiff has an interest in keeping his authorization to receive Medicare funds and has an interest in receiving reimbursement for treating Medicare patients. This interest, however, is not entitled to great protection because the plaintiff may continue to treat Medicare patients, and if plaintiff prevails in his appeal, plaintiff will be eligible for reimbursement. *Ritter v. Cohen,* 797 F.2d 119, 123 (3rd Cir.1986). Furthermore, plaintiff is not totally dependent on the Medicare program because he can seek private patients. *Id.*

With respect to the additional protections against erroneous deprivation, the Court believes that an evidentiary hearing would not provide substantial additional protection. Plaintiff had the opportunity to meet with the PRO and to submit written reasons to both the PRO and the Secretary as to why he should not be terminated from the Medicare program. An evidentiary hearing prior to the imposition of sanctions would not significantly protect the plaintiff from an erroneous deprivation. *Id.; Northlake Community Hospital v. United States,* 654 F.2d at 1242.

Finally, with respect to the government's interest, the government has an interest in protecting Medicare beneficiaries from substandard care and enforcing the Medicare program at the lowest possible cost. The Secretary's primary responsibility is ensuring the safety and care of elderly and disabled Medicare patients. This responsibility, along with the government's interest in preserving scarce financial and administra-

tive resources, is more important than the risk that plaintiff may be erroneously excluded from the Medicare program if he does not receive a full evidentiary hearing prior to the imposition of sanctions. *Northlake Community Hospital v. United States,* 654 F.2d at 1242. For these reasons, the Court believes that plaintiff is not entitled to a pre-termination hearing and that he received all the process to which he was entitled. Accordingly, plaintiff's constitutional claim of due process deprivation is not colorable.

The Court now examines whether plaintiff's constitutional claim is collateral to the claim for federal benefits. The Court believes that plaintiff's claim is collateral because plaintiff does not seek to have this Court decide that the Secretary does not have cause to terminate his participation in the Medicare program, but rather seeks to have this Court decide that the Secretary has not afforded the plaintiff due process prior to terminating his participation in the Medicare program. *Greene v. Bowen,* 639 F.Supp. 554, 560 (E.D.Ca.1986).

This Court has found that the plaintiff has raised a fundamental constitutional claim that is collateral to his claim for federal benefits, but is not colorable. Accordingly, plaintiff has failed to meet the first prerequisite for waiving the exhaustion requirement. Nevertheless, the Court will examine the remaining two prerequisites for waiving the exhaustion requirement.

The second prerequisite for waiving the exhaustion requirement is that the plaintiff must be irreparably injured if the exhaustion requirement is not waived and if plaintiff cannot challenge the due process afforded him until after the completion of administrative procedures. Because plaintiff's authorization to receive Medicare payments has been terminated, he will lose a substantial portion of his current gross income needed to pay current salaries and overhead. Plaintiff will also most likely permanently lose many of his Medicare patients who will be forced to find alternative sources of medical care while he is unable, for monetary reasons, to treat them. Finally, plaintiff will continue to suffer with the label that he "grossly and flagrantly"

violated his obligation to provide quality medical care to Medicare patients.

The third prerequisite for waiving the exhaustion requirement is futility; in other words, that requiring the plaintiff to exhaust his administrative remedies would not serve the purpose of the exhaustion requirement. The Supreme Court, in *Bowen v. City of New York,* —— U.S. ——, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) stated:

> [A]pplication of the exhaustion doctrine is "intensely practical." *Eldridge,* 424 U.S., at 331, n. 11, 96 S.Ct., at 901, n. 11. In [*Weinberger v.*] *Salfi,* [422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)] we explained:
>
>> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review. 422 U.S., at 765, 95 S.Ct., at 2467.
>
> The ultimate decision of whether to waive exhaustion should ... be guided by the policies underlying the exhaustion requirement.

*Id.* 106 S.Ct. at 2032.

Plaintiff alleges that WiPRO was biased, that WiPRO failed to follow the required procedures, and that plaintiff should have been provided with a pre-termination evidentiary hearing. With regard to the claims that WiPRO was biased and that WiPRO failed to follow the required procedures, the Court believes that plaintiff should be required to exhaust his administrative remedies before pursuing these claims in court. The Court believes that plaintiff should be required to exhaust his administrative remedies because

> [i]n the normal course, such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal will alert the agency to the alleged deviation. Because of the agency's expertise in administering its own regulations, the agency ordinarily

should be given the opportunity to review application of those regulations to a particular factual context.

*Id.*

With regard to the claim that plaintiff should have been provided with a pre-termination evidentiary hearing, the Court believes the policy underlying the exhaustion requirement would not be served by requiring exhaustion. Requiring plaintiff to exhaust his administrative remedies when plaintiff contends that those same procedures violate due process would be futile. *Id.*

■ In summary, this Court finds that the exhaustion requirement should not be waived in this case. The exhaustion requirement should not be waived as to the claims that WiPRO was biased and that WiPRO failed to follow the required procedures because a waiver would be contrary to the policy underlying the exhaustion requirement. The exhaustion requirement should not be waived as to the claim that plaintiff should have been provided with a pre-termination evidentiary hearing because such a claim does not state a colorable constitutional claim. Since this Court finds that plaintiff has not met the exhaustion requirement and that the exhaustion requirement should not be waived in this case, the Court does not have jurisdiction of this case under 42 U.S.C. § 405(g).

In the alternative, plaintiff contends that this Court has jurisdiction over his claim pursuant to 28 U.S.C. §§ 1331 or 1361. The Court believes it does not have jurisdiction pursuant to § 1331. The Court's opinion is based on 42 U.S.C. § 405(h), which states in part that:

No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The Supreme Court in *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) has made clear that this section "provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act. *Id.* at 614–15, 104 S.Ct. at 2021. This Court believes that plaintiff's claim clearly arises under the Medicare Act. Plaintiff's status as a Medicare provider, the sanctions at issues, and the procedures used to impose those sanctions are all based upon the Medicare Act. Since plaintiff's claim arises under the Medicare Act, this Court cannot have jurisdiction pursuant to § 1331.

■ With regard to 28 U.S.C. § 1361, this Court believes that jurisdiction is also not available. According to the Supreme Court in *Heckler v. Ringer*, "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Id.* at 616, 104 S.Ct. at 2022. The Court believes that the Medicare Act and the applicable regulations provide plaintiff with an adequate remedy for challenging the actions of WiPRO and the Secretary in this case. *Id.* at 617, 104 S.Ct. at 2022. Given that plaintiff has an adequate remedy that he has not exhausted, plaintiff is not entitled to mandamus relief.

After examining the various bases for jurisdiction, this Court finds that it does not have subject matter jurisdiction of this case. Accordingly, plaintiff's complaint must be dismissed.[1]

### ORDER

IT IS ORDERED that the motion of defendants Bowen and Kusserow for summary judgment is GRANTED, and that plain-

---

1. Since this case has been dismissed, this Court will not decide the merits of defendant WiPRO's motion to dismiss. The Court, however, is of the initial opinion that WiPRO is not a proper defendant because plaintiff was not injured by WiPRO's determination and recommendation, but rather was injured by the Secretary's accept-ance of the determination and recommendation. This Court believes that once the Secretary accepts the determination and recommendation, only the Secretary is the proper party in an action challenging the PRO's and the Secretary's actions. 42 U.S.C. § 405(h).

**1434**

tiff's complaint is DISMISSED with prejudice.