Richard ABBEY, et al., Plaintiffs,

v.

Louis W. SULLIVAN, as Secretary of the Department of Health and Human Services, William Toby, Harvey W. Friedman, William C. Woodson, and Rela Heimberg, Defendants.

No. 91 Civ. 4909 (RLC).

United States District Court,
S.D. New York.

Feb. 7, 1992.

Brown & Seymour, New York City (Whitney North Seymour, Jr., New York City, of counsel) for plaintiffs.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Gideon A. Schor, New York City, of counsel) for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

This case presents a controversy over the power of a federal court to review a dispute arising under the Medicare Act, 42 U.S.C. § 1395 *et seq.* (the "Act" or the "Medicare Act"). Plaintiffs are claimants for medical benefits under the Medicare Act. Defendants are the Secretary of the Department of Health and Human Services ("HHS"); the administrator for region II of the Health Care Financing Administration ("HCFA") of HHS; an officer of Empire Blue Cross and Blue Shield, the insurance carrier that administers the Medicare Part B program in the New York area; and the two Medicare hearing officers who reviewed the plaintiffs' claims.

Some background about the Medicare Act and its claims review process is necessary to an understanding of this case. The Medicare Act is composed of two parts, Part A, 42 U.S.C. §§ 1395c–1395i, and Part B, 42 U.S.C. §§ 1395j–1395w. Part A provides insurance coverage for hospital care and related post-hospital services, and is funded out of Social Security taxes. Part B is a voluntary program of medical insurance for persons who are over 65 or disabled. Individuals pay monthly premiums for insurance that covers portions of certain medical services which are excluded from the Part A program. HHS contracts with private insurance carriers to administer the Part B program. The carrier reviews claims for reimbursement according to procedures established by the Medicare Act and notifies claimants of its initial decision. If a claimant is dissatisfied with the carrier's determination, she can request initial review by the carrier within six months. 42 C.F.R. § 405.807 (1990). The carrier then re-reviews the claim and issues a notice of decision on review to the claimant. 42 C.F.R. § 405.811 (1990).

If the claimant is still not satisfied with the carrier's disposition of the claim, she can request a "fair hearing." 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. § 405.820 (1990). The "fair hearing" is conducted by

a hearing officer, employed by the carrier, who is bound to evaluate the claim in accordance with the terms of the Medicare Act, HHS regulations, and policy statements issued by HCFA. 42 C.F.R. § 405.-860 (1990). The primary procedural guide for hearing officers is HCFA's Medicare Carrier's Manual ("MCM"), particularly sections 12013–12022.

The Medicare Carrier's Manual instructs the hearing officer to conduct the required "fair hearing" in one of three ways: in person, over the telephone, or "on the record." A decision on the record ("OTR") is based solely on documentary evidence. The MCM also includes the following provision, interpretation of which is disputed in this case:

> Regardless of the type of hearing requested (telephone, in-person, or a decision based on the record), the HO [hearing officer] prepares and sends to the claimant a decision based on the facts in the record (OTR), unless one of the following apply [sic]:
> —The OTR would significantly delay the hearing;
> —The issue is medical necessity;
> —Oral testimony and cross-examination is [sic] necessary to clarify the facts; or
> —You [the carrier] cannot provide a different HO for the requested hearing.
> If the claimant requested an in-person hearing or telephone hearing, the HO includes as the first paragraph in the OTR decision a statement that he has scheduled the requested type of hearing within the 120 day time limit provided by law, but, meanwhile, has rendered this decision based on the evidence in the file.

\* \* \* \* \* \*

An OTR decision may be contraindicated even though requested by a party to the hearing. If the HO decides that an in-person or telephone hearing would help him reach an equitable decision, he notifies all parties of the time and date and explains why oral testimony is needed. If the needed parties do not attend, the HO renders an OTR decision.

Medicare Carrier's Manual 12021.

After the "fair hearing" decision, the amount remaining in controversy determines what further review is available to the claimant. If the disputed amount is less than $500, no further review is provided. If the amount in controversy is $500 to $999, the claimant is entitled to review by an Administrative Law Judge ("ALJ"). *Isaacs v. Bowen*, 865 F.2d 468, 472–75 (2d Cir.1989). If the amount in controversy is $1,000 or more, the claimant is entitled to judicial review in federal district court. *Id.;* 42 U.S.C. § 1395ff(b)(2)(B).

The complaint in this action charges the carrier's hearing officers with failing to follow applicable HHS rules and regulations. Specifically, plaintiffs in groups A and C[1] assert that they requested an in-person hearing, along with a written decision on the record before the in-person hearing. The hearing officers involved agreed to conduct an in-person hearing but refused to provide the pre-hearing OTR decision. Plaintiffs claim that such a pre-hearing OTR is required by the MCM provisions cited above, that the insurance carrier is bound to follow the rules and regulations set forth in the MCM, and that its failure to follow those rules constitutes a violation of due process of law. Group B plaintiffs complain that the hearing officers denied them the opportunity at the "fair hearing" to develop evidence they required as part of their challenge to the rates set by the carrier, and that this denial also violated governing rules and regulations. Plaintiffs

---

**1.** The complaint divides plaintiffs into three groups: A, B, and C. Group A includes plaintiffs Brewer, Kramer, Kuberski, Murch, and Pilicer. Their claims were filed with HHS's carrier Empire Blue Cross and Blue Shield and they had "fair hearings" scheduled before defendant Heimberg. Group B includes plaintiffs Abbey, Rogers, and Cirillo. Their claims were filed with HHS's carrier Blue Shield of Western New York and then transferred to the downstate Medicare carrier, Empire Blue Cross and Blue Shield, for appeal through the carrier level. Group C includes plaintiffs Dowd, Goble, Macaluso, Salamone, and Viani. Their claims were filed with Empire Blue Cross and Blue Shield and they were scheduled for "fair hearings" before defendant Woodson.

seek injunctive, declaratory, and mandamus relief.

Defendants have moved to dismiss the action under Rules 12(b)(1) and 12(b)(6), F.R.Civ.P., for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Plaintiffs allege that jurisdiction exists over the subject matter of this action under the general "federal question" statute, 28 U.S.C. § 1331; under the Medicare Act itself, 42 U.S.C. § 1395ff; and under the federal mandamus statute, 28 U.S.C. § 1361. Defendants argue that none of these three sources of jurisdiction is appropriate in this instance.

I. Jurisdiction under 28 U.S.C. § 1331

■ Defendants argue that plaintiffs' claim, arising as it does under the Medicare Act, is governed by the terms of that Act and does not support jurisdiction under the general federal question statute, 28 U.S.C. § 1331. Defendants note that section 1395ff of the Medicare Act incorporates the jurisdictional provisions of 42 U.S.C. § 405(g). Section 405(g) is a more limited jurisdictional statute than section 1331 because it requires a claimant to exhaust all administrative remedies before granting jurisdiction in the federal courts. Defendants cite *Weinberger v. Salfi*, 422 U.S. 749, 756–62, 95 S.Ct. 2457, 2462–65, 45 L.Ed.2d 522 (1975) and *Heckler v. Ringer*, 466 U.S. 602, 614–16, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984) in support of their argument. Indeed, *Ringer* states that "§ 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act." 466 U.S. at 615, 104 S.Ct. at 2021. Since plaintiffs' claims do "arise under the Medicare Act," there would be no jurisdiction over those claims under section 1331 if this were the rule.

However, in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), the Supreme Court expanded on its earlier holding in *Ringer*.[2] The Court noted that the jurisdictional limitations of section 405

were not independently applicable to suits under the Medicare Act, but were instead applicable only through their incorporation into that Act through 42 U.S.C. § 1395ff. The Court then explained that

[t]he legislative history of both the statute establishing the Medicare program and the 1972 amendments thereto provides specific evidence of Congress' intent to foreclose [federal judicial] review only of "amount determinations"—*i.e.*, those "quite minor matters," remitted finally and exclusively to adjudication by private insurance carriers in a "fair hearing." By the same token, matters which Congress did *not* delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law.

476 U.S. at 680, 106 S.Ct. at 2141 (internal citations omitted) (emphasis in original). Thus the Court recognized certain situations where the jurisdictional limitations of section 405 do not apply to claims that arise under the Medicare Act, narrowing the reach of its earlier pronouncement in *Ringer*.

■ However, *Michigan Academy* has left some unanswered questions about the scope of section 1331 jurisdiction over claims arising under the Medicare Act. After *Michigan Academy* it is clear that there is jurisdiction in the federal courts to hear statutory and constitutional challenges to the validity of rules and regulations promulgated under the Medicare Act, regardless of whether there has been a final decision of the Secretary. *See Kuritzky v. Blue Shield of Western New York, Inc.*, 850 F.2d 126, 128 (2d Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989); *McCuin v. Secretary of Health & Human Services*, 817 F.2d 161, 164–66 (1st Cir.1987); *Medical Fund–Philadelphia Geriatric Center v. Heckler*, 804 F.2d 33, 38–39 (3d Cir.1986). It is also clear that there is no federal jurisdiction, absent full exhaustion of administrative remedies and a final decision of the Secre-

**2.** Contrary to defendant's assertions, the 1986 amendments to Medicare Part B do not render

*Michigan Academy* a "dead letter." *See Griffith v. Bowen,* 678 F.Supp. 942 (D.Mass.1988).

tary, when the plaintiff merely challenges the amount of benefits awarded by the Secretary. *Id.* However, some claims arising under the Medicare Act may fall between these two clearly defined categories, and *Michigan Academy* is not precise as to whether or not such claims give rise to section 1331 jurisdiction.

Plaintiffs here present just such an intermediate claim. Plaintiffs do not challenge, on statutory or constitutional grounds, the validity of any HHS rule or regulation. Instead, they seek enforcement of what they admit is a completely valid regulation, complaining simply that the Secretary, through the designated carrier, has failed to follow the procedures set forth in those regulations. Thus plaintiffs' challenge does not fit neatly into that set of challenges under the Medicare Act which, according to *Michigan Academy*, clearly supports jurisdiction under 28 U.S.C. § 1331.

However, plaintiffs' claim also does not fit clearly within the category of challenges under the Medicare Act that is unquestionably excluded from section 1331 jurisdiction. The Supreme Court's holding in *Michigan Academy* spoke specifically of challenges to "amount determinations" when defining those matters outside the scope of section 1331. However, plaintiffs' claim is that the Secretary has departed from procedures set forth in valid rules and regulations, not that the amount of benefits awarded by the Secretary was in error, and thus does not fit squarely within the language of *Michigan Academy* which denies jurisdiction under section 1331.

*Michigan Academy* is therefore ambiguous as to whether claims such as those advanced by plaintiffs are included in or excluded from section 1331 jurisdiction. The efforts of lower federal courts to interpret *Michigan Academy* reflect this ambiguity. The First and Third Circuit Courts of Appeals have each focused on the language in *Michigan Academy* that defines the claims arising under the Medicare Act that do not give rise to section 1331 jurisdiction. They have, however, advanced divergent interpretations of this part of the *Michigan Academy* opinion. The Second

Circuit, in contrast, has focused on the language in *Michigan Academy* that defines those claims arising under the Medicare Act that do support section 1331 jurisdiction. As explained below, this difference in focus is significant for those claims, such as the present one, that fall between the clearly defined poles of *Michigan Academy*.

The Third Circuit, in *Medical Fund, supra,* 804 F.2d at 38–39, focuses on the Court's statement that Congress intended "to foreclose [federal judicial] review only of 'amount determinations'—*i.e.,* those 'quite minor matters,' remitted finally and exclusively to adjudication by private insurance carriers in a 'fair hearing.'" 476 U.S. at 680, 106 S.Ct. at 2141 (internal citation omitted). *Medical Fund* interprets this language as a rather broad exclusion from judicial review. It holds that, in addition to amount determinations, the Court meant to exclude from judicial review under section 1331 any matter that is within the jurisdiction of the hearing officer. Under this test, if a matter is within the statutory jurisdiction of the hearing officer, then it is unreviewable in federal court. *Accord American Ambulance Serv., Inc. v. Sullivan,* 911 F.2d 901, 904–07 (3d Cir.1990). In *Medical Fund,* the court confronted a claim that certain HHS regulations were made in excess of statutory authority. The court reasoned that since the MCM dictates that hearing officers may not "comment upon the legality of the [Medicare] Act or regulations issued thereunder," Medicare Carrier's Manual § 12016 (1985), the hearing officer lacks jurisdiction to hear constitutional or statutory challenges to the validity of the Secretary's rules and regulations, and such challenges are therefore cognizable in federal court under section 1331. *See* 804 F.2d at 38–39.

The First Circuit has taken a different approach to *Michigan Academy*. In *McCuin, supra,* 817 F.2d 161, the court interpreted the same language from *Michigan Academy* more narrowly. In that case an ALJ awarded a claimant Medicare benefits. Subsequently, the Appeals Council reopened the ALJ's decision *sua sponte* and altered the ruling. The claimant sued

in federal court, asserting that the Appeals Council had no authority to reopen the case under the Secretary's regulations. The First Circuit held that the claimant's contention that the Secretary had failed to follow its own regulations was not a challenge to an amount determination and therefore gave rise to section 1331 jurisdiction under *Michigan Academy.* The First Circuit interpreted *Michigan Academy* as a mandate to "construe the word 'amount' narrowly," 817 F.2d at 165, thus excluding from section 1331 jurisdiction only those claims under the Medicare Act that are clearly challenges to "amount determinations," and not expanding the excluded area to include all matters within the statutory jurisdiction of the hearing officers.

While the First and Third Circuits derived their rules from the language in *Michigan Academy* that defined matters not supporting section 1331 jurisdiction, the Second Circuit developed its rule from the language in *Michigan Academy* that specifies which matters do provide a basis for section 1331 jurisdiction. In *Kuritzky, supra,* 850 F.2d 126, the court focused on the following holding from *Michigan Academy:* "[M]atters which Congress did *not* delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law." 476 U.S. at 680, 106 S.Ct. at 2141 (emphasis in original). In *Kuritzky* the Second Circuit interpreted this language to mean that only challenges to the validity of rules or regulations give rise to section 1331 jurisdiction. *See Kuritzky, supra,* 850 F.2d at 128 (holding that the plaintiff's claim did "not fall within the scope of *Michigan Academy* because plaintiffs do not attack the validity of any regulation or rule promulgated by the Secretary."). Thus it remarked that "jurisdiction is lacking where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations" of the Secretary. *Id. See also Association of Seat Lift Mfrs. v. Bowen,* 858 F.2d 308 (6th Cir.1988).

The different interpretations of *Michigan Academy* adopted by the circuits would produce different results in the present case. Under the Third Circuit's test, whether jurisdiction existed in this case would depend on the scope of the hearing officer's jurisdiction, a question the court need not address here. Under the First Circuit's interpretation of *Michigan Academy* in *McCuin,* the facts of the present case would seem to support section 1331 jurisdiction, since the plaintiffs do not challenge an amount determination.

However, this court is bound by the Second Circuit's holding in *Kuritzky.* Since plaintiffs in this case do not challenge the validity of a rule or regulation of the Secretary, but instead contest the Secretary's interpretation of its rules and regulations, their claim does not give rise to section 1331 jurisdiction under *Michigan Academy* as interpreted by the Second Circuit in *Kuritzky,* 850 F.2d at 128.

## II. Jurisdiction under the Medicare Act

Since plaintiffs' claim does not support jurisdiction under 28 U.S.C. § 1331, the court has jurisdiction over the subject matter of this case only if plaintiffs have met the jurisdictional requirements of 42 U.S.C. § 405(g), incorporated into the Medicare Act through 42 U.S.C. § 1395ff(b)(1).

42 U.S.C. § 405(g) provides for judicial review "after any final decision of the Secretary made after a hearing to which ... [the claimant] was a party." The "final decision" requirement has two components, one waivable and the other nonwaivable. The nonwaivable requirement is that the plaintiffs have presented a claim for benefits to the Secretary. The waivable requirement is that plaintiffs have exhausted the administrative review procedures prescribed by the Secretary. The exhaustion requirement may be waived by the Secretary, or, under appropriate circumstances, by the court. *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *City of New York v. Heckler,* 742 F.2d 729, 736 (2d Cir.1984), aff'd sub nom. *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).

Plaintiffs here have clearly satisfied the nonwaivable element required by section

405(g) by filing claims for reimbursement with the Secretary's designated carriers. They have not, however, satisfied the exhaustion requirement, since they have not pursued their administrative remedies to a final decision of the Secretary. The Secretary has not waived the exhaustion requirement, and the court therefore has jurisdiction only if a sufficient reason exists to waive the exhaustion requirement.

■ In determining whether to waive the exhaustion requirement, the court considers (1) whether the claim is collateral to any demand for benefits, (2) whether exhaustion would be futile, and (3) whether the harm plaintiffs would suffer pending exhaustion would be irreparable. No one of these factors is crucial. *City of New York v. Heckler, supra*, 742 F.2d at 736. Plaintiffs complain of procedural irregularities and failures of the hearing officers to follow applicable rules and regulations. These claims are collateral to their underlying claim for benefits. Indeed, plaintiffs do not argue the merits of their benefits applications, and do not dispute any determination of an amount of benefits awarded in this case. Thus the first factor indicating that waiver may be appropriate is established.

■ Plaintiffs have not demonstrated that exhaustion of the administrative review process would be futile, however. Plaintiffs do not complain that the Secretary's rules or regulations are invalid on constitutional or statutory grounds. Instead they embrace the validity of those rules and simply request the Secretary to adhere to them. This brings their claim squarely within the rule that where a plaintiff complains merely that the agency has failed to follow its own procedures, exhaustion should not be waived. *Mercer v. Birchman*, 700 F.2d 828 (2d Cir.1983). In *Birchman*, the court explained that in such a case, the agency should be given the opportunity to acknowledge that procedural defaults are deviations from established agency policy and to correct them. The court noted that none of the usual justifications for waiving the exhaustion require-

ment on the grounds of futility were present in this situation, observing that [n]o question of statutory validity as in *Salfi*, no attack on the Secretary's prescribed regulations as in *Eldridge*, no conflict between the established procedures of cooperating agencies as in *Ellis v. Blum* [643 F.2d 68 (2d Cir.1981)] render[s] illusory the prospect of an administrative remedy for the wrongs these plaintiffs allege so as to justify resort to the courts before exhaustion. *Id.* at 832.

Plaintiffs complain that two acts of certain hearing officers, namely their failure to provide a pre-hearing OTR and their failure to order production of certain evidence, are contrary to the Secretary's rules and regulations. However, plaintiffs have not explained why further review within the agency could not provide effective relief, other than to assert generally that the "administrative procedures ... are designed only to review the question of eligibility for reimbursement," Plaintiffs' brief at 9, and to cite *City of New York v. Heckler, supra*, 742 F.2d at 737.

*City of New York v. Heckler* is inapposite because that court expressly noted that it was not dealing with a case where "exhaustion serves to ... allow the agency 'an opportunity to correct its own errors.'" *Id.* (quoting *Salfi, supra*, 422 U.S. at 765, 95 S.Ct. at 2467). Further, that case involved not simply allegations of procedural errors in one or two instances, but a "system-wide, unrevealed policy that was inconsistent in critically important ways with established regulations.... The District Court found that the policy was being adhered to by state agencies due to pressure from SSA, and that therefore exhaustion would have been futile." *Bowen v. City of New York, supra*, 476 U.S. at 485, 106 S.Ct. at 2032-33. Thus to the extent that *Bowen v. City of New York* established an exception to the *Birchman* rule, it is reserved for allegations of procedural error so wide-spread as to constitute a *de facto* policy that it would be unreasonable to expect HHS to overturn on its own. Here, plaintiffs do not allege that the procedural errors purportedly made in their cases are endemic to the system or constitute a hid-

den policy of HHS or of the Medicare carriers. Thus they do not fall within the futility exception to the exhaustion requirement as defined in *Birchman* and *Bowen v. City of New York.*

Further, plaintiffs have not demonstrated how the administrative review process is incapable of correcting the procedural errors they protest. Plaintiffs could have participated in the hearing before the hearing officer and then argued the procedural errors before an ALJ, the next level of review. The plaintiffs have not explained why the ALJ lacks the authority to remand to the hearing officer if procedural violations have occurred. Given the possibility in this case of "allow[ing] the agency 'an opportunity to correct its own errors,'" insufficient reason exists to waive the exhaustion requirement. *City of New York v. Heckler, supra,* 742 F.2d at 737 (citation omitted).

The final factor to be considered in determining whether waiver of the exhaustion requirement is appropriate in a given case is whether plaintiffs would suffer irreparable harm if forced to exhaust the administrative review process. Such irreparable harm has been found where plaintiffs are dependent upon the benefits they seek. *See, e.g., Eldridge, supra,* 424 U.S. at 330–332, 96 S.Ct. at 900–901. Here plaintiffs seek reimbursement for medical expenses under the Medicare Act. Thus they have already expended money for the medical services they received or, where plaintiffs are medical service providers who have been assigned claims of patients, they are simply awaiting payment for services rendered. In neither case are plaintiffs so dependent on these Medicare reimbursements or payments that they would suffer irreparable harm if required to exhaust the administrative review process before seeking relief in federal court. Accordingly, this factor does not weigh in favor of waiving the exhaustion requirement.

Since exhausting the administrative review process would neither subject plaintiffs to irreparable harm nor be a futile exercise, an exception to the exhaustion requirement is not warranted in this case. Without a final decision of the Secretary or a waiver of the exhaustion requirement, plaintiffs have not met the jurisdictional requirements of 42 U.S.C. § 405(g).

III. Mandamus Jurisdiction

The federal mandamus statute, 28 U.S.C. § 1361, provides an independent basis for jurisdiction in the district court. The Second Circuit standard for mandamus jurisdiction is set forth in *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 946 (2d Cir.1976), as follows:

> The prerequisites to the issuance of a writ of mandamus have been stated as (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the defendant's part to do the act in question; and (3) lack of another available, adequate remedy.

Even assuming for the sake of argument that plaintiffs met parts (1) and (2) of this standard, they cannot meet part (3), since administrative remedies are still open to them, as discussed above. Accordingly, no mandamus jurisdiction exists in this case.

Since the court lacks jurisdiction over the subject matter of this action, defendant's motion to dismiss the complaint in its entirety is hereby granted. Given this holding, the court need not address defendants' arguments under Rule 12(b)(6), F.R.Civ.P.

IT IS SO ORDERED.