**Benjamin SCHWARTZ, Plaintiff,**

v.

**MEDICARE, Defendant.**

**Civ. A. No. 93–1868 (AJL).**

United States District Court,
D. New Jersey.

July 30, 1993.

Benjamin Schwartz, pro se.

John C. Jeannopoulos, Asst. U.S. Atty., Newark, NJ, for defendant.

## OPINION

LECHNER, District Judge.

Currently before the court is the motion of defendant Medicare ("Medicare") to dismiss the complaint (the "Complaint"), dated 31 March 1993,[1] for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).[2] For the reasons that follow, the motion to dismiss is granted.

*Facts*

### A. The Medicare Program

Title 18 of the Social Security Act (the "SSA"), 42 U.S.C. §§ 1395 *et seq.*, also known as the Medicare Act, establishes the program of Health Insurance for the Aged and Disabled, commonly known as Medicare. *Neurological Assocs.*, 658 F.Supp. at 469. Beneficiaries of Medicare are individuals who have become eligible for Social Security insurance pursuant to Title 2 of the SSA. *See* 42 U.S.C. §§ 401–433. Medicare is administered by the Health Care Financing Administration (the "HCFA"), on behalf of the Secretary of the Department of Health and Human Services (the "HHS Secretary"), who is

---

**1.** This action was originally filed in the Superior Court of New Jersey, Special Civil Part, Law Division, Bergen County. *See* Notice of Removal (the "Notice of Removal"), filed 30 April 1993, ¶ 1. On 30 April 1993, this case was removed to this court pursuant to 28 U.S.C. §§ 1441(b) & 1446. Notice of Removal at 1.

Although the named defendant in this case is Medicare, pursuant to 42 C.F.R. § 421.5(b), the United States is the real party in interest in any matter involving the administration of the Medicare Program. *See id.* Moreover, although the only party served with the Complaint was Pennsylvania Blue Shield ("PA Blue Shield"), a Fiscal Intermediary for Medicare in New Jersey, *see* 42 U.S.C. §§ 1395h, 1395kk(b); 42 C.F.R. §§ 421.-100, 421.200, a fiscal intermediary is considered to be a representative of the United States and the United States is the real party in interest in suit against Fiscal Intermediary. S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965

U.S.C.C.A.N. 1943, 1992–95; *see also Neurological Assocs.–H. Hooshmand v. Bowen*, 658 F.Supp. 468, 469 (S.D.Fla.1987) (same); *Fox v. Bowen*, 656 F.Supp. 1236, 1238 n. 3 (D.Conn. 1986) (same).

**2.** In support of the motion to dismiss, Medicare has submitted the following: Memorandum of Law in Support of Defendant's Motion to Dismiss For Lack of Subject Matter Jurisdiction (the "Moving Brief"); Declaration of Morton Berkowitz (the "Berkowitz Decl.").

Plaintiff Benjamin Schwartz ("Schwartz") has not submitted any papers in opposition to the motion to dismiss. Service appears to have been made on Schwartz on 3 June 1993, by first class mail, eight weeks before the date of this opinion. *See* Certificate of Service of Denise Davis, executed 3 June 1993. No communication of any kind has been received from Schwartz concerning this motion or this case.

ultimately responsible for the administration of Medicare. *Universal Health Servs. of McAllen, Inc. v. Sullivan,* 770 F.Supp. 704, 707 (D.D.C.1991), *aff'd,* 978 F.2d 745 (D.C.Cir.1992); *Neurological Assocs.,* 658 F.Supp. at 469; *see also* 42 U.S.C. § 1395kk(a).

Medicare, Part A ("Medicare A"), provides insurance for hospital, related post-hospital and home health services for eligible beneficiaries. *See* 42 U.S.C. §§ 1395c–1395f (describing Medicare A program); *see also Bodimetric Health Servs., Inc. v. Aetna Life & Cas.,* 903 F.2d 480, 482 n. 2 (7th Cir.), *cert. denied,* 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); *Medical Fund–Philadelphia Geriatric Ctr. v. Heckler,* 804 F.2d 33, 35 (3d Cir.1986); *Abbey v. Sullivan,* 788 F.Supp. 165, 166 (S.D.N.Y.1992), *aff'd,* 978 F.2d 37 (2d Cir.1992). Medicare A benefits are paid to health care providers, usually a hospital, nursing home or home health agency, rather than to the Medicare beneficiaries themselves. 42 U.S.C. §§ 1395f; *see also* 42 U.S.C. § 1395x(u) (defining "provider of services").

Medicare, Part B ("Medicare B"), is a voluntary subscription program of supplemental medical insurance, covering eighty percent of charges for other medical services, including physician services, x-rays, laboratory tests and medical supplies. 42 U.S.C. §§ 1395j–1395*l* (describing Medicare B program); *see also Bodimetric,* 903 F.2d at 482; *Medical Fund,* 804 F.2d at 35; *Abbey,* 788 F.Supp. at 166; *Neurological Assocs.,* 658 F.Supp. at 469. Medicare B benefits are generally paid directly to Medicare beneficiaries, although a beneficiary may assign the right to receive payment on a Medicare B claim to a health care provider or supplier of health care related services. 42 U.S.C. § 1395*l; see also* 42 C.F.R. § 405.802(c)–(e) (defining "assignor," "assignee" and "assignment"). In the latter case, the assignee submits the claim and receives payment. 42 U.S.C. § 1395*l*.

To facilitate the administration of Medicare, the SSA authorizes the HHS Secretary to contract with entities known as "Fiscal Intermediaries" or "Carriers," which are often private insurance companies. *See* 42 U.S.C. §§ 1395h, 1395kk(b); 42 C.F.R.

§§ 421.100, 421.200; *see also Neurological Assocs.,* 658 F.Supp. at 469; *Fox,* 656 F.Supp. at 1238. Fiscal Intermediaries process and review claims submitted by health care providers, beneficiaries or the assignees of beneficiaries to determine (1) whether the claims are for covered services and (2) what is the appropriate amount of the Medicare payment. *See* 42 C.F.R. §§ 421.100(a), 421.-200(a); *see also Westchester Mgmt. Corp. v. United States Dep't of Health & Human Servs.,* 948 F.2d 279, 280 n. 3 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); *Bodimetric,* 903 F.2d at 482 n. 3; *Medical Fund,* 804 F.2d at 35; *Abbey,* 788 F.Supp. at 166.

A Medicare beneficiary who disputes either the amount of payment provided on a claim or the denial of payment is entitled to various stages of administrative review of the adverse determination. 42 U.S.C. § 1395ff(b) (incorporating by reference 42 U.S.C. § 405(b)); *see also* 42 C.F.R. §§ 405.-701–405.750 (describing administrative appeals process for Medicare A and Medicare B claims). The procedures for Medicare A benefits and Medicare B benefits differ slightly.

In the case of Medicare A benefits, a Fiscal Intermediary makes the initial claim determination. *See* 42 C.F.R. §§ 405.701–402.-704, 421.100(a), 421.200(a). A dissatisfied beneficiary, within sixty days after receipt of the initial claim determination by a Fiscal Intermediary, may request the Fiscal Intermediary to reconsider the claim decision. *See* 42 C.F.R. §§ 405.708–405.711. If the amount in dispute exceeds one hundred dollars, the beneficiary may then request a hearing before an administrative law judge (an "ALJ") within sixty days of receipt of the Fiscal Intermediary's reconsidered decision. *See* 42 U.S.C. §§ 405(b), 1395ff(b)(2)(A); 42 C.F.R. § 405.720. If dissatisfied with the ALJ's decision, a beneficiary may then request review by the Medicare Appeals Council (the "Appeals Council"). *See* 42 C.F.R. §§ 405.701(c), 405.724. After these procedures have been exhausted, and if the claims are greater than one thousand dollars, a beneficiary may seek Federal judicial review of the disputed claims. *See* 42 U.S.C.

§ 1395ff(b)(2)(A); 42 C.F.R. § 405.730; *see also* 20 C.F.R. part 404, subpart J (explaining general administrative appeal process for claims under SSA, including Medicare); *Bodimetric*, 903 F.2d at 483 (reviewing administrative appeal process for Medicare A claims).

In the case of Medicare B benefits, the procedure is the same, except that an additional administrative step is required prior to Federal judicial review. A dissatisfied beneficiary may seek reconsideration by the Fiscal Intermediary of its initial claim determination. *See* 42 C.F.R. §§ 405.801–405.812. If the amount in dispute is greater than one hundred dollars, a beneficiary may request a "fair hearing" before a hearing officer (the "Medicare Hearing Officer"),[3] within six months of receipt of the Fiscal Intermediary's reconsidered determination.[4] *See* 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. §§ 405.-820–405.835. If the amount in dispute exceeds five hundred dollars, a beneficiary may then request a hearing before an ALJ within sixty days of receipt of the decision of the Medicare Hearing Officer and, if still dissatisfied, can then request review by the Appeals Council. *See* 42 U.S.C. §§ 405(g), 1395ff(b)(2)(B); 42 C.F.R. § 405.801(c). Once these administrative procedures have been exhausted, if the claim is for at least one thousand dollars, a dissatisfied beneficiary may seek Federal judicial review.[5] *See* 42 U.S.C. §§ 405(g), 1395ff(b)(2)(B); *see also* 20 C.F.R. part 404, subpart J; *Abbey*, 788

F.Supp. at 166 (reviewing administrative appellate process for Medicare B claims).

## B. *Disputed Claims In This Case* [6]

This case concerns a total $850 in unpaid Medicare benefits. *See* Complaint at 1; *see also* Berkowitz Decl., ¶ 5. The disputed claims appear to arise from medical services rendered to Schwartz from 26 October 1992 through 29 October 1992, during an inpatient stay by Schwartz at the Hackensack Medical Center ("Hackensack Medical Center"). Moving Brief at 7; Berkowitz Decl., ¶ 5.

Under Medicare A, Schwartz submitted a claim for $3,600.89. Berkowitz Decl., ¶ 6. This claim was initially denied by New Jersey Blue Cross/Blue Shield ("NJ Blue Cross"), one of two Fiscal Intermediaries for Medicare in New Jersey,[7] on the ground that Medicare was not Schwartz's primary insurer. *Id.*, ¶ 6 & Ex. 1 (letter, dated 25 November 1992, denying claim). Subsequently, when NJ Blue Cross learned from proof submitted by Schwartz that Medicare was his primary insurer, his Medicare A claim was reprocessed. *Id.*, ¶ 6 & Ex. 2 (letter, dated 6 May 1993, notifying Schwartz of reprocessing and payment of claim). NJ Blue Cross approved $2,652.75 of the claim and paid the hospital $2,300.75 for all covered services. *Id.* Schwartz remained responsible for uncovered services, as well as an inpatient deductible of $682. *Id.* By letter, dated 6 May 1993, Schwartz was notified of the payment determination and was advised of his right to appeal.[8] *Id.*, Ex. 2 at 2.

---

3. The Medicare Hearing Officer is employed by the Fiscal Intermediary and is "bound to evaluate the claim in accordance with the terms of the Medicare Act, HHS regulations, and policy statements issued by HCFA." *Abbey*, 788 F.Supp. at 166–67; *see also* 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. §§ 405.823, 405.860.

4. Such hearing officer's decision is final and binding unless it is appealed or revised in accordance with 42 C.F.R. §§ 405.835 and 405.841.

5. An assignee of a Medicare B benefits claim has the same appeal rights, and must follow the same appellate procedures, as the Medicare beneficiary. *See* 42 C.F.R. § 405.802(b).

6. The Complaint is a one-page document that simply lists the parties to the action and states that Schwartz seeks to recover $850 from Medicare for "refus[al] to pay the hospital and doc-

tor[s] bill[s] [for] service[s] rendered [by] Hackensack Med[ical] Centre." *See* Complaint at 1. Because the Complaint contains no description of relevant facts, particularly as to the disputed Medicare claims, and because Schwartz has failed to submit any papers in connection with this motion, the facts described below are taken from the documents submitted by Medicare.

7. The other Fiscal Intermediary for Medicare in New Jersey is Pennsylvania Blue Shield ("PA Blue Shield"). Berkowitz Decl., ¶ 4.

8. The Notice from NJ Blue Cross contained the following information:

   D. YOUR RIGHT TO RECONSIDERATION OF THIS MEDICARE BENEFIT DETERMINATION: If you believe that Medicare should have covered more of your expenses, please ask the office shown just below item 2 for an explanation.

Schwartz also submitted a series of Medicare B claims. First, Schwartz submitted a claim for $610 for services provided by the Hackensack Medical Center Mobile Care Unit. *Id.*, ¶ 7 & Exs. 3–4. After first rejecting this claim on the ground that Medicare was not the primary insurer of Schwartz, *see id.*, Ex. 3 (letter, dated 9 December 1992, rejecting claim), NJ Blue Cross reprocessed the claim and paid $408,[9] using $100 of the claim to satisfy Schwartz's Medicare B deductible and paying eighty percent of the remaining $510. *Id.*, ¶ 8 & Ex. 4 (letter, dated 24 March 1993, notifying Schwartz of reprocessing and payment of claim). By letter, dated 24 March 1993, Schwartz was sent notice of the payment determination and advised of his right to appeal.[10] *Id.*, Ex. 4.

Second, Schwartz submitted a Medicare B claim for $70 for services provided by Dr. Glenn R. Silbert, M.D. ("Silbert"). *Id.*, ¶ 9 & Exs. 5–6. This claim was processed by PA Blue Shield. *Id.* After first rejecting this claim on the ground that Medicare was not Schwartz's primary insurer, *see id.*, Ex. 5 (letter, dated 30 April 1993, rejecting claim), PA Blue Shield reprocessed the claim, approved $48.17 and paid Schwartz a total of $38.55,[11] representing eighty percent of the

approved amount plus one cent for delayed processing. *Id.*, ¶ 8 & Ex. 6 (letter, dated 13 May 1993, notifying Schwartz of reprocessing and payment of claim). By letter, dated 13 May 1993, Schwartz was notified of the payment determination and advised of his right to appeal.[12] *Id.*, Ex. 6.

Third, Schwartz submitted a Medicare B claim for $195.91 for services rendered by Dr. Luminita Fulop, M.D. ("Fulop"). *Id.*, ¶ 9 & Exs. 7–8. After first rejecting the claim on the ground that Medicare was not Schwartz's primary insurer, *see id.*, Ex. 7 (letter, dated 30 April 1993, rejecting claim), PA Blue Shield reprocessed the claim, approved $163.26 and paid to Schwartz a total of $130.63,[13] representing eighty percent of the approved amount plus two cents for delayed processing. *Id.*, ¶ 9 & Ex. 8 (letter, dated 13 May 1993, notifying Schwartz of reprocessing and payment of claim). By letter, dated 13 May 1993, Schwartz was notified of the payment determination and advised of his right to appeal. *Id.*, Ex. 8.

Fourth, Schwartz submitted a Medicare B claim of $12.88 for services provided by the Hackensack Rad Group ("HRG"). *Id.*, ¶ 10 & Exs. 9–10. After first rejecting this claim

You may also request a reconsideration or review of the decision. The request must be made no later than 60 days from the receipt of this record for hospital insurance expenses or not later than 6 months from the date of issuance of this notice for medical expenses.... If you are not satisfied with the reconsideration or review, you may request a hearing which must be made not later than 60 days from the receipt of the notice of reconsideration for hospital insurance expenses or not later than 6 months from the date shown on the notice of review for medical expenses.
E. IF YOU WANT HELP WITH YOUR APPEAL: You can have a friend, lawyer or someone else help you. Some lawyers do not charge unless you win your appeal. There are groups, such as lawyer referral services, that can help you find a lawyer. There are also groups, such as legal aide services, who will give you free legal services if you qualify.
Berkowitz Decl., Ex. 2 at 2.

9. Payment of this claim was made directly from NJ Blue Cross to Hackensack Medical Center. Berkowitz Decl., ¶ 7.

10. Although the form used to process this Medicare B claim differed from that used to process

the Medicare A claim discussed above, Schwartz was still advised:

If you have any questions about the way your claim was handled or if you believe Medicare should have paid more of the bill, you should contact the office which sent you this notice for an explanation.... If you are not satisfied with the explanation, you may request a formal review of your claim. If you desire a review, you must request it no later than 6 months from the date shown on this notice.
Berkowitz Decl., Ex. 4 at 2.

11. Silbert did not accept assignment of this claim from Schwartz, hence Schwartz was paid directly by PA Blue Shield. Berkowitz Decl., ¶ 8.

12. The language of this notice regarding the right to appeal was substantially similar to the language already quoted above. *See supra* at nn. 8, 10; *see also* Berkowitz Decl., Ex. 6 at 4. Moreover, for each of Schwartz's claims processed by PA Blue Shield, the language regarding the right to appeal was identical. *See* Berkowitz Decl., Exs. 6, 8, 10, 12–13.

13. Fulop did not accept assignment of this claim from Schwartz, hence Schwartz was paid directly by PA Blue Shield. Berkowitz Decl., ¶ 9.

on the ground that Medicare was not Schwartz's primary insurer, *see id.*, Ex. 9 (letter, dated 30 April 1993, rejecting claim), PA Blue Shield reprocessed the claim, approved $10.73 and paid to Schwartz a total of $8.58,[14] representing eighty percent of the approved amount. *Id.*, ¶ 10 & Ex. 10 (letter, dated 13 May 1993, notifying Schwartz of reprocessing and payment of claim). By letter, dated 13 May 1993, Schwartz was notified of the payment determination and advised of his right to appeal. *Id.*, Ex. 10.

Fifth, Schwartz submitted a Medicare B claim for $200 for services rendered by Emergency Medical Associates ("EMA"). *Id.*, ¶ 11 & Exs. 11–12. After first rejecting this claim on the ground that Medicare was not Schwartz's primary insurer, *see id.*, Ex. 11 (letter, dated 30 April 1993, rejecting claim), PA Blue Shield reprocessed the claim, approved $109.41 and paid to EMA a total amount of $87.53, representing eighty percent of the approved amount. *Id.*, ¶ 11 & Ex. 12 (letter, dated 13 May 1993, notifying Schwartz of reprocessing and payment of claim). Because EMA accepted assignment of the claim, Schwartz was responsible only for the remaining twenty percent co-payment. *Id.* By letter, dated 13 May 1993, Schwartz was notified of the payment determination and advised of his right to appeal. *Id.*, Ex. 12.

Finally, Schwartz submitted a Medicare B claim for $248.64 for services provided by HMC Cardiac Diagnostic Service ("HMC"). *Id.*, ¶ 12 & Ex. 13. This claim was rejected by PA Blue Shield on the ground of inadequate documentation. *Id.*, Ex. 13 (letter, dated 13 May 1993, rejecting claim). By letter, dated 13 May 1993, Schwartz was notified of the payment determination and advised of his right to appeal. *Id.*, ¶ 12. Schwartz has since filed a second claim for the HMC services which is still being processed by PA Blue Shield. *Id.*

Schwartz has not requested reconsideration or otherwise appealed any of the reprocessed payment determinations for his Medicare A claim or for any of his Medicare B claims. Moving Brief at 11; Berkowitz Decl., ¶¶ 6–12. Accordingly, there has been no reconsideration, no hearing before a Medicare Hearing Officer, no hearing before an ALJ and no determination by the Appeals Council, with regard to any of Schwartz's Medicare claims. Moving Brief at 11; Berkowitz Decl., ¶ 14.

*Discussion*

Medicare argues dismissal is appropriate for two reasons. First, Medicare argues Schwartz has failed to exhaust his administrative remedies as required by the SSA and by HHS regulations. Moving Brief at 2. Second, Medicare argues the amount in controversy fails to satisfy the $1,000 jurisdiction amount required for Federal judicial review of a disputed Medicare claim. *Id.*

A. Standard of Review—Fed.R.Civ.P. 12(b)(1)

■ A challenge to the court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) differs from an attack on the merits pursuant to Fed.R.Civ.P. 12(b)(6) or 56. Rule 12(b)(1) does not afford a plaintiff all the procedural safeguards provided by Rules 12(b)(6) and 56. Instead, Rule 12(b)(1) challenges a plaintiff's right to be heard in Federal court. Limited procedural safeguards exist depending on the type of Rule 12(b)(1) motion.

There are two types of 12(b)(1) motions, those which "attack the complaint on its face" and those which "attack the existence of subject matter jurisdiction in fact, quite apart from any pleading." *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977); *Frankford Hosp. v. Davis*, 647 F.Supp. 1443, 1445 (E.D.Pa.1986). The facial attack offers a safeguard to the plaintiff similar to a 12(b)(6) motion; the allegations of the complaint are considered to be true. *Mortensen*, 549 F.2d at 891.

For a 12(b)(1) motion addressing the existence of subject matter jurisdiction, no presumptive truthfulness attaches to a plaintiff's allegations. *Id.* Accordingly, unlike a Rule

---

**14.** HRG did not accept assignment of this claim from Schwartz, hence Schwartz was paid directly by PA Blue Shield. Berkowitz Decl., ¶ 10.

12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may "decide for itself the factual issues which determine jurisdiction." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). This type of a Rule 12(b)(1) motion need not be converted into a Rule 56 motion when extra pleading materials are considered. *Williamson*, 645 F.2d at 416; *Frankford Hosp.*, 647 F.Supp. at 1445; *see also* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 at 676.

Although motions pursuant to Rules 12(b)(1) and 12(b)(6) are distinct, often jurisdictional issues are intertwined with the merits of a case. "Where an attack on jurisdiction implicates the merits of a plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited...." *Williamson*, 645 F.2d at 413 n. 6.

> In other words, when the basis of jurisdiction is also an element in the plaintiff's [F]ederal cause of action, a conservative approach to a 12(b)(1) motion to dismiss is warranted. Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a [F]ederal cause of action, the proper course of action for the district court (assuming that the plaintiff's [F]ederal claim is not immaterial and made solely for the purpose of obtaining [F]ederal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case.

*Id.* at 415 (citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). However, as further explained by *Williamson*, "a jurisdictional attack which does *not* implicate the merits of any [F]ederal cause of action is not bound by [this] ... standard." 645 F.2d at 415 n. 9 (emphasis in original).

■ A Federal court has broad power to decide whether it has jurisdiction to hear a case and may make factual findings which are decisive to the issue of jurisdiction. *Id.* at 413. The burden of demonstrating the existence of Federal jurisdiction is on the party seeking to invoke it. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Mortensen*, 549 F.2d at 891. In this case, the challenge is to subject matter jurisdiction *per se*; the motion to dismiss neither attacks the Complaint on its face nor addresses the merits of Schwartz's case.

### B. *Failure to Exhaust Administrative Remedies*

■ The Medicare Act provides for Federal judicial review "after such hearing as is provided in section 405(g) of this title." 42 U.S.C. § 1395ff. The Supreme Court has read two prerequisites to judicial review of Medicare claims: (1) A plaintiff must present a claim for benefits to the HHS Secretary [15] and (2) a plaintiff must exhaust all available administrative remedies after the initial denial of a claim.[16] *See Bowen v. City of New York*, 476 U.S. 467, 483, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986); *Mathews*, 424 U.S. at 328–30, 96 S.Ct. at 899–900; *Weinberger v. Salfi*, 422 U.S. 749, 763–65, 95 S.Ct. 2457, 2465–67, 45 L.Ed.2d 522 (1975); *see also Tataranowicz*, 959 F.2d at 272; *Doyle v. Secretary of Health & Human Servs.*, 848 F.2d 296, 299 (1st Cir.1988); *Fox*, 656 F.Supp. at 1243.

As outlined above, *see supra* at pp. 783–785, "Congress has provided elaborate review provisions to be used by parties dissatisfied with the initial disposition of their Medicare

---

**15.** This requirement is satisfied by presentation of a claim to the Fiscal Intermediary which, as discussed, makes initial claim determinations on behalf of the HHS Secretary. *See Tataranowicz v. Sullivan*, 959 F.2d 268, 272 (D.C.Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 963, 122 L.Ed.2d 120 (1993).

**16.** When pursuit of administrative remedies would be "futile," the exhaustion requirement may be waived. *Tataranowicz*, 959 F.2d at 273–75 (citing *Mathews v. Eldridge*, 424 U.S. 319, 331 n. 11, 96 S.Ct. 893, 901 n. 11, 47 L.Ed.2d 18 (1976); *Mathews v. Diaz*, 426 U.S. 67, 76–77, 96 S.Ct. 1883, 1889–90, 48 L.Ed.2d 478 (1976)). There is nothing in the Complaint to indicate, nor does it appear, that exhaustion has been waived in this case or that pursuit of administrative remedies would be futile.

claims." *Bodimetric,* 903 F.2d at 483. Congress intended "the remedies provided by these review procedures to be exclusive." *Id.* (quoting *Bodimetric Health Servs. v. Aetna Life & Cas.,* 706 F.Supp. 619, 621 (N.D.Ill. 1989) (citing S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.C.C.A.N. 1943, 1995)); *see also In re St. Mary Hosp.,* 123 B.R. 14, 14–15 (E.D.Pa.1991) ("all Medicare cases must go through an elaborate administrative process before the jurisdiction of the district court may be invoked"); *Doe v. Bowen,* 682 F.Supp. 637, 640 (D.Mass.1987) (same).

The exclusive nature of these remedies is reflected in the statutory structure of the Medicare Act. *Bodimetric,* 903 F.2d at 483; *Wilkins v. Sullivan,* 889 F.2d 135, 138 (7th Cir.1989); *see also Doyle,* 848 F.2d at 299 ("[i]n the Medicare area, Congress has elevated the ordinary administrative 'common law' principle of exhaustion into a statutory requirement"). As 42 U.S.C. § 405(h) provides:

> The findings and decision of the [HHS] Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision by the [HHS] Secretary shall be reviewed by any person, tribunal, or governmental agency *except as herein provided.* No action against the United States, the [HHS], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (incorporated by 42 U.S.C. § 1395ff) (emphasis added); *see also Bodimetric,* 903 F.2d at 488–90 (also finding no independent jurisdiction for Medicare claims under 28 U.S.C. § 1332).

Put simply, any claim arising under the Medicare Act must be brought "exclusively" under the administrative provisions of the Medicare Act. *Wilkins,* 889 F.2d at 138; *see also Abbey,* 788 F.Supp. at 168 (Medicare Act requires claimants to exhaust all administrative remedies before granting jurisdiction in Federal courts); *United States v. Total Patient Care, Inc.,* 780 F.Supp. 1371, 1373 (M.D.Fla.1991) (same).

When Medicare claimants have failed to exhaust their administrative remedies, courts have not hesitated to dismiss those claims for lack of subject matter jurisdiction. *See, e.g., Heckler v. Ringer,* 466 U.S. 602, 614–16, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984); *Bodimetric,* 903 F.2d at 483–90 & n. 10; *Buckner v. Heckler,* 804 F.2d 258, 259–61 (4th Cir.1986); *Abbey,* 788 F.Supp. at 170–72; *St. Mary,* 123 B.R. at 15–18; *Hussain v. Secretary of Health & Human Servs.,* 748 F.Supp. 277, 279–80 (D.N.J.1990); *Neurological Assocs.,* 658 F.Supp. at 472–73. *Cf. Doyle,* 848 F.2d at 299–300; *Varandani v. Bowen,* 824 F.2d 307, 313 (4th Cir.1987), *cert. dismissed,* 484 U.S. 1052, 108 S.Ct. 1000, 98 L.Ed.2d 968 (1988); *Total Patient Care,* 780 F.Supp. at 1373; *Doe,* 682 F.Supp. at 646; *Papendick v. Bowen,* 658 F.Supp. 1425, 1433 (W.D.Wis.1987); *Frankford Hosp.,* 647 F.Supp. at 1446–47, 1453.

Indeed, enforcement of the exhaustion requirement serves important Federal interests. As courts have explained:

> [Exhaustion] allows the agency to develop a factual record, to apply its expertise to a problem, to exercise its discretion, and to correct its own mistakes, all before a court will intervene. Insofar as specialized administrative understanding is important, the doctrine thereby promotes accurate results, not only at the agency level, but also by allowing more informed judicial review. By limiting judicial interruption of agency proceedings, the doctrine can encourage expeditious decision making. Insofar as Congress has provided that an agency will decide a matter in the first instance, to apply the doctrine normally furthers specific Congressional intent. And, as a general matter, the doctrine promotes a sensible division of tasks between the agency and the court; litigants are discouraged from weakening the position of the agency by flouting its processes, while court resources are reserved for dealing primarily with those matters which could not be resolved administratively. Thus, the doctrine serves the interests of accuracy, efficiency, agency autonomy and judicial economy.

*Doyle,* 848 F.2d at 300 (quoting *Ezratty v. Puerto Rico,* 648 F.2d 770, 774 (1st Cir. 1981)); *accord Heckler,* 466 U.S. at 619 n. 12, 621, 104 S.Ct. at 2024, 2024–25; *Weinberger,* 422 U.S. at 765, 95 S.Ct. at 2467; *Buckner,* 804 F.2d at 260–61; *Doe,* 682 F.Supp. at 641.

■ In this case, the Complaint indicates Schwartz seeks recovery of unpaid Medicare benefits. Because these claims arise under the Medicare Act and concern an alleged entitlement to Medicare benefits, it is clear Schwartz was required to exhaust his administrative remedies prior to seeking judicial review of his claims. 42 U.S.C. § 1395ff. Nevertheless, it appears Schwartz has not sought reconsideration by either NJ Blue Cross or PA Blue Shield of any of their claims determinations and has not otherwise pursued his administrative remedies. *See supra* at p. 787. Accordingly, consistent with the authority discussed above, the Complaint is dismissed for lack of subject matter jurisdiction.[17]

### C. *Failure to Establish Jurisdiction Amount*

■ Regardless of whether a claim is made for Medicare A benefits or Medicare B benefits, 42 U.S.C. § 1395ff(b)(2)(A) and (B) provide that "judicial review shall not be available to the individual ... if the amount in controversy is less than $1,000." *Id.* When a Medicare plaintiff is unable to meet the statutorily-prescribed jurisdictional amount, jurisdiction is lacking and dismissal is appropriate. *See, e.g., Westchester Mgmt.,* 948 F.2d at 282–83.

In this case, the Complaint alleges unpaid Medicare benefits totalling $850. Because this amount is less than $1,000, Schwartz is unable to meet the statutorily-prescribed jurisdictional amount of 42 U.S.C. § 1395ff(b)(2)(A) and (B). Accordingly, the Complaint must be dismissed on this ground as well.

*Conclusion*

For the foregoing reasons, the motion to dismiss the Complaint for lack of subject matter jurisdiction is granted.

---

17. Dismissal, rather than remand to state court, is appropriate because actions challenging Medicare benefits can only be brought in Federal district court. *See* 42 U.S.C. § 405(g) (Medicare action "shall be brought in the district court of the United States for the judicial district in which plaintiff resides or has his principal place of business"); *see also* 42 C.F.R. § 404.981 (Appeals Council determination is binding unless party "file[s] an action in Federal district court").