*1459
 
 ORDER GRANTING PLAINTIFFS’ MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT’S MOTION FOR SUMMARY JUDGMENT
 

 DAVIES, District Judge.
 

 On February 5,1996, the Plaintiffs’ Motion for Summary Judgment and the Defendant’s Cross-Motion for Summary Judgment came on for hearing. The Court, having considered the parties’ •written submissions, and the oral arguments of counsel, hereby GRANTS the Plaintiffs’ Motion for Summary Judgment and DENIES the Defendant’s Cross-Motion for Summary Judgment.
 

 Facts
 

 Plaintiffs are twenty five research hospitals (hereinafter “the Hospitals”) that provide hospital services to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395
 
 et seq.
 
 By way of the instant action, the Hospitals challenge a Medicare manual instruction, promulgated by the Secretary of Health and Human Services in 1986. The instruction provides that payment may not be made under the Medicare program for medical services performed using devices which have not been approved for marketing by the Food and Drug Administration (“FDA”).
 

 Food and Drug Administration Regulation of Medical Devices
 

 In 1976 Congress amended the Federal Food, Drug, and Cosmetic Act to establish a procedure for classifying and regulating the sale of medical devices. 21 U.S.C. §§ 360, 360c, 360e. Pursuant to the amendments the FDA classifies medical devices in one of three categories: Class I, Class II, and Class III.
 
 See
 
 21 U.S.C. § 360c.
 

 Class I devices are those for which “general controls” are sufficient to provide a reasonable assurance of safety and effectiveness. For example, tongue depressors and elastic bandages are class I devices. Chissler Decl. ¶ 3. Devices for which general controls, by themselves, are insufficient to provide a reasonable assurance of safety and effectiveness may be classified as Class II if such assurance can be provided with special controls. Special controls may include the promulgation of performance standards, post-market surveillance, patent registries, and other appropriate actions as the Secretary deems necessary. 21 U.S.C. § 360(c). Examples of Class II devices are electronic and mercury thermometers, and blood pressure cuffs. Chissler Deck ¶ 3.
 

 Class I and Class II devices may be commercially distributed after notification is provided to the FDA under section 510(k) of the Food, Drug and Cosmetic Act. 21 U.S.C. § 360(k). The FDA approves the marketing of these devices if it finds, based on the information contained in the pre-market notification, that the device is substantially equivalent to a device already approved for marketing.
 

 Class III devices are devices for which insufficient information exists to determine that the application of general or special controls would be sufficient to provide reasonable assurance of the safety and effectiveness of the device. Additionally, these devices are either (1) used in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health, or (2) present a potential unreasonable risk of illness or injury. Examples of Class III devices include implantable pacemakers and replacement heart valves. Chissler Décl. ¶ 3.
 

 Class III devices are subject to pre-market approval by the FDA before they can be commercially distributed. 21 U.S.C. § 360e(a)(l)(C). The FDA grants pre-market approval for a device if the applicant demonstrates a reasonable assurance that the device is safe and effective. 21 U.S.C. § 3606(d).
 
 [1]
 

 In 1980 the Secretary promulgated regulations providing an exemption to the premarket approval requirement for investigational devices used in clinical trials. Under the investigational device exemption a Class
 
 *1460
 
 III device may be lawfully distributed to hospitals and physicians for use in clinical trials prior to obtaining pre-market approval. 21 U.S.C. § 360j(g); 21 C.F.R. Part 812. The purpose of the clinical trials is to gather evidence of the safety and effectiveness of the device. The clinical trials are monitored by an Institutional Review Board composed of physicians, other researchers and lay individuals, who are charged with protecting the rights and welfare of patients receiving investigational treatments.
 

 The medical devices at issue in this action were sold to the Hospitals for use in clinical trials pursuant to an investigational device exemption. The Hospitals used these devices in treating patients, including Medicare beneficiaries, in clinical trials. Additionally, the Institutional Review Board of each Hospital may authorize the “compassionate use” of an investigational device on an individual case basis, outside of a clinical trial. Such use is permitted where other devices or alternative procedures have been, or would be used without success or at excessive risk to the patient, and where the investigational device is the last remaining efficacious choice.
 

 The Medicare Program
 

 The Medicare program is a government-sponsored health insurance program that pays for covered medical services provided to eligible aged and disabled persons. The program is administered by the Health Care Financing Administration (“HCFA”) on behalf of the Secretary of Health and Human Services (“the Secretary”). The HCFA, in turn, contracts with entities known as “fiscal intermediaries” to act as the Secretary’s agents in administering the program.
 
 See
 
 42 U.S.C. § 1395h. Generally, the fiscal intermediaries are private insurance companies.
 

 Pursuant to the instructions of the Secretary and the HCFA, the fiscal intermediaries,
 
 inter alia,
 
 process and review claims to determine (1) whether the claims are for covered services and (2) the appropriate amount of reimbursement.
 
 See
 
 42 C.F.R. §§ 421(a) & (b);
 
 See generally, Schwartz v. Medicare,
 
 832 F.Supp. 782, 784 (D.N.J.1993). In making coverage determinations the fiscal intermediaries are bound to follow the instructions promulgated by the Secretary.
 
 See
 
 42 C.F.R. § 405.806.
 

 The Medicare Act provides that “items or services ... [which] are not reasonable and necessary for the diagnosis or treatment of illness or injury, or to improve the functioning of a malformed body member” are not reimbursable under the Medicare Act. 42 U.S.C. § 1395y(a)(l)(A). The statute does not define the term “reasonable and necessary.”
 

 Prior to 1986, the determination of whether a medical device was reasonable and necessary for treatment was generally made by the fiscal intermediaries. The fiscal intermediaries considered a medical device to be reasonable and necessary if it was accepted by the medical community as an effective and proven treatment, or if the device was established as safe and effective by authoritative evidence. Hoyer Decl. ¶ 4. This determination was made on a case-by-case basis.
 

 The first written evidence of the application of the “not reasonable and necessary” exclusion to the coverage of experimental or investigational medical items or services is a letter issued to the fiscal intermediaries in 1977. In the letter the Secretary provided sample language for use by the fiscal intermediaries in responding to inquiries concerning the coverage of investigational or experimental devices or services. The purpose of this sample language was to make it clear that a denial of coverage did not reflect a “determination by Medicare that the use of such items or services by the physician is ‘improper treatment.’ ” Exhibit B, Plaintiffs’ Motion for Summary Judgment.
 

 The sample language provided for response to inquiries about investigational medical devices states, in part:
 

 In making such a decision [whether to provide payment for a particular service] a basic consideration is whether the service has come to be generally accepted by the professional medical community as an effective and proven treatment for the condition for which it is being used. If it is, Medicare may make payment. On the other hand, if the service or treatment is one
 
 *1461
 
 that is not yet generally accepted, is rarely used, novel or relatively unknown, then authoritative evidence must be obtained to establish it is safe and effective before Medicare may make payment.
 

 (Include a statement on the particular item or service in question.)
 

 We appreciate the fact that an investigational item or service that has not yet been proven may, nevertheless, under the circumstances of a particular case, represent in the physician’s judgment, an appropriate method for the treatment of the patient’s condition. We wish to emphasize that Medicare noncoverage of investigational items or services should not be interpreted as a judgment as to the appropriateness of the physician’s choice of treatment. This is simply a decision that such services are not covered under the Medicare health insurance program.
 

 Exhibit A to Plaintiffs’ Motion for Summary Judgment (Enclosure I, Part A Intermediary Letter No. 77-4, Part B Intermediary Letter No. 77-5 (Jan. 1997)).
 

 The Secretary also provided the fiscal intermediaries with sample language for use in responding to inquiries related to investigational drugs. Unlike the sample language provided for investigational devices, however, the sample language for investigational drugs includes a specific reference to the FDA requirements for marketing. The sample language for response to an inquiry about •investigational drugs states:
 

 In the administration of the Medicare program, we have consistently taken the position that a drug may be covered only where it is being used to treat a condition for which the Food and Drug Administration (the agency specifically charged with responsibility for approving and licensing drugs) has determined it is safe and effective and. has approved it for general use. (Include a statement concerning FDA’s ruling on the specific drug in question). We appreciate the fact that a drug that has been determined by FDA to be “investigational” may, nevertheless, under the circumstances of a particular case, represent in the physician’s judgment, an appropriate method for the treatment of the patient’s condition. We wish to emphasize that Medicare noncoverage of investigational drugs and the services rendered in connection with their use should.not be interpreted as a judgment as to the appropriateness of the physician’s choice of treatment. This is simply a decision that such services are not covered under the Medicare health insurance program.
 

 Thus, the letters indicate that the fiscal intermediaries provided Medicare coverage for drugs only if the drug in question was approved for marketing by the FDA. In the case of medical devices, however, there was no similar requirement for FDA approval. Medical devices were deemed reasonable and necessary for treatment so long as they were generally accepted by the medical community, or, for the “rarely used, novel or relatively unknown” medical device, if there was “authoritative evidence of safety and effectiveness.”
 

 Further, it is undisputed that prior to 1986 the fiscal intermediaries regularly reimbursed the Hospitals for services involving the use of a medical device pursuant to an investigational device exemption.
 
 See
 
 Defendants Statement of Genuine Issues, ¶ 10. These investigational devices had not received pre-market approval. Thus, the actual practice of the fiscal intermediaries also demonstrates that FDA approval was not necessary to a determination that a medical device was reasonable and necessary for treatment.
 

 The Secretary contends that “[i]n those instances in which FDA approval or clearance of drugs or devices is required before general marketing, it has generally been HCFA’s policy that such items are not covered by Medicare unless they have been approved or cleared by the FDA.” Hoyer Decl. ¶4. This statement, however, does not contradict a finding that FDA approval was not a necessary prerequisite to Medicare coverage for medical devices. Instead, it appears that in some cases the fiscal intermediaries departed from this general policy because they generally paid for services involving investigational devices that had not received pre-market approval by the FDA.
 

 
 *1462
 

 The 1986 Medicare Manual Instruction
 

 By 1986 the HCFA had received a number of inquiries regarding Medicare’s coverage policy for medical devices that received an investigational device exemption, but not premarket approval. Hoyer Decl. ¶ 9. In July 1986 the Secretary instructed the fiscal intermediaries to deny Medicare coverage for all medical devices not approved for marketing by the FDA including investigational devices. The instruction, set forth in the instruction manual issued to fiscal intermediaries, states:
 

 Devices Not Approved by FDA
 
 — Medical devices which have not been approved for marketing by the FDA are considered investigational by Medicare and are not reasonable and necessary for the diagnosis or treatment of illness or injury, or to improve the functioning of a malformed body member. Program payment, therefore may not be made for medical procedures or services performed using devices which have not been approved for marketing by the FDA
 

 Medicare Hospital Manual section 260.1; Medicare Intermediary Manual section 3151.1; Medicare Carriers Manual section 2303.1 (hereinafter collectively referred to as “the 1986 Medicare manual instruction” or “the instruction”).
 

 The transmittal sheet which accompanied this instruction stated, “NEW POLICY— EFFECTIVE DATE: For services performed on or after July 15,1986.” Plaintiffs’ Motion for Summary Judgment, Exh. C. The Secretary contends that the instruction was not in fact a new policy, but was labeled as such because it had not previously been published in the Medicare manuals. Hoyer Decl. ¶ 13.
 

 Despite the issuance of the instruction, from 1986 to 1994 the fiscal intermediaries continued to pay for services in which investigational devices were used.
 
 See
 
 Defendant’s Statement of Genuine Issues of Material Fact ¶26. The Hospitals contend that in August 1994, the fiscal intermediaries began enforcing the instruction, and the Hospitals began to receive notices of noncoverage and nonpayment of services involving the use of investigational devices.
 

 On May 1, 1995, the Hospitals filed a complaint for declaratory judgment and injunctive relief. The complaint alleges that the 1986 instruction is unlawful because it was not promulgated in accordance with the rule-making requirements of the Administrative Procedures Act (“APA”), 5 U.S.C. § 553, and the Medicare Act, 42 U.S.C. § 1395hh. The Hospitals seek a “judgment declaring the Secretary’s policy of nonpayment and non-coverage for investigational devices and the services associated with their use as provided by Hospitals to be without force and effect for lack of compliance with required rule-making procedures.” Prayer for Relief ¶ 1. The Hospitals also seek to enjoin the Secretary from enforcing the 1986 manual instruction as to the Hospitals, and an order compelling the Secretary to comply with the Medicare Act and the APA in promulgating new regulations.
 
 Id.
 
 at ¶¶ 2-3.
 

 Discussion
 

 Summary Judgment Standard
 

 The Federal Rules of Civil Procedure provide for summary judgment if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.CivJP. 56(c). The Supreme Court clarified the standard for summary judgment in three important eases.
 
 See Celotex Corporation v. Catrett,
 
 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);
 
 Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
 

 The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.
 
 Anderson,
 
 477 U.S. at 256, 106 S.Ct. at 2514. Whether a fact is material is determined by looking to the governing substantive law; a fact is material if it may affect the outcome of the suit.
 
 Id.
 
 at 248, 106 S.Ct. at 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it
 
 *1463
 
 bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party’s case.
 
 See Celotex,
 
 477 U.S. at 325, 106 S.Ct. at 2553-54;
 
 see also
 
 Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial §§ 14:123-141 (1993).
 

 When the moving party meets its burden, the “adverse party may not rest upon the mere allegations or denials of the adverse party’s pleadings, but the adverse party’s response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Fed.R.Civ.P. Rule 56(e). Summary judgment will be entered against the non-moving party, when appropriate, if that party does not present these specific facts.
 
 Id.
 

 In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor.
 
 Anderson,
 
 477 U.S. at 255, 106 S.Ct. at 2513-14 (citing
 
 Adickes v. S.H. Kress and Company,
 
 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, “the mere existence of a scintilla of evidence” is insufficient.
 
 Id.
 
 at 252, 106 S.Ct. at 2512. As the Court explained in
 
 Matsushita,
 
 475 U.S. at 586-87, 106 S.Ct. at 1356:
 

 When the moving parly has carried its burden under Rule 56(e), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts____ Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no “genuine issue for trial.”
 

 However, an alleged “genuine issue” will not defeat summary judgment where the factual context makes the non-movant’s allegations implausible.
 
 See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,
 
 818 F.2d 1466, 1468 (9th Cir. 1987),
 
 cert. denied,
 
 848 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). Conseqhently, where the factual context makes the non-movant’s claim implausible, the nonmovant “must come forward with more persuasive evidence to support their claim than would otherwise be necessary” to show that there is a genuine issue for trial.
 
 Id.
 

 The Rule-making Requirements of the Medicare Act
 

 The Hospitals contend that the 1986 Medicare manual instruction is invalid under the rule-making requirements of the Medicare Act.
 
 See
 
 42 U.S.C. § 1395hh(a)(2). Title 42 U.S.C. § 1395hh(a)(2) provides:
 

 No rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals [or others] to furnish or receive services or benefits under this subchapter shall take effect unless it is promulgated by the Secretary by regulation under paragraph (1).
 

 Thus, under Section 1395hh(a)(2) a rule establishing a “substantive legal standard” must be published as a regulation, with notice, and an opportunity for public comment.
 

 Title 42 U.S.C. § 1395hh(a)(2) was enacted as part of the Omnibus Budget Reconciliation Act of 1987. Pub.L. 100-203 § 4035, 101 Stat. 1330-78 (1987). The Medicare manual instruction challenged by the Hospitals, however, became effective in July 1986. Thus, for 42 U.S.C. § 1395hh(a)(2) to apply to the Medicare manual instruction, it must be applied retroactively.
 

 It is well established that “[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.”
 
 Bowen v. Georgetown University Hosp.,
 
 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). There is no indication in the language or the legislative history of 42 U.S.C. § 1395hh(a)(2) that Congress intended the statute to have retroactive application. Thus, Section 1395hh(a)(2) cannot be applied retroactively to invalidate the 1986 Medicare manual instruction.
 

 
 *1464
 

 The Administrative Procedure Act
 

 The Hospitals also argue that the 1986 Medicare manual instruction is invalid because it was not promulgated in accordance with the rule-making requirements of the APA.
 

 Section 553 of the APA requires publication of proposed agency rules to be followed by a period for public consideration and comment. 5 U.S.C. § 553(b), (c). The requirements for notice and comment, however, do not apply to “interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.” 5 U.S.C. § 553(b)(3)(A).
 
 [2]
 
 The Ninth Circuit has held that:
 

 Interpretative rules are those which merely clarify or explain existing law or regulations. They are “non-binding” and do not “foreclose alternate courses of action or conclusively affect rights of private parties.” Only substantive rules are subject to the APA. Substantive rules are those which effect a change in existing law or policy, or remove previously existing rights.
 

 Linoz v. Heckler,
 
 800 F.2d 871, 877 (9th Cir.1986). The Secretary’s characterization of the rule, while relevant, is not dispositive.
 
 General Motors Corp. v. Ruckelshaus,
 
 742 F.2d 1561, 1565 (D.C.Cir.1984),
 
 cert. denied,
 
 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985).
 

 The Secretary contends that the 1986 Medicare manual instruction merely interprets section 1395y(a)(l)(A), which provides that no payment be made for services not reasonable and necessary for treatment. The Secretary also contends that the 1986 Medicare manual instruction merely codified the long-standing policy that experimental, or investigational, medical devices are not reasonable and necessary for treatment.
 

 In
 
 Linoz v. Heckler,
 
 800 F.2d 871 (9th Cir.1986) the Ninth Circuit addressed this issue in a similar factual context.
 
 Linoz
 
 involved a regulation, promulgated by the Secretary in 1971, which provided Medicare coverage for ambulance services from a hospital which “lacks appropriate facilities” to “the nearest institution having appropriate facilities.”
 
 Linoz,
 
 800 F.2d at 876. Four years later, the Secretary promulgated Medicare manual instruction which provided that transportation to another hospital “solely to avail a patient of the service of ... a physician in a specific speciality” did not make the hospital where that physician was located the “nearest hospital with appropriate facilities.” As a result of this manual instruction, the plaintiffs were denied coverage for ambulance services.
 
 Id.
 
 at 877.
 

 The Ninth Circuit rejected the argument that the manual instruction was merely interpretive. The Court held:
 

 [Ijnstead of simply clarifying a pre-existing regulation, [the manual instruction] carved out a per se exception to the rule that ambulance service to the ‘nearest institution with appropriate facilities’ ... was covered under ... the Medicare program. The provision withdrew coverage previously provided and thus ‘effectfed] a change in existing law or policy.’
 

 Linoz,
 
 800 F.2d at 877.
 

 The Ninth Circuit also noted that the instruction was neither required nor specifically authorized by the enabling legislation. The Court distinguished
 
 Linoz
 
 from eases in which the Court found rules to be interpretive because they “merely tracked” statutory requirements and “simply explained something the statute already required.” The Ninth Circuit stated that “the statute neither requires nor specifically authorizes the Secretary to deny reimbursement for ambulance transportation based on the availability of a specialist at the receiving hospital.”
 
 Linoz,
 
 800 F.2d at 877 n. 10. As a result, the Court held that the instruction was substantive in nature, and the Secretary was required to comply with the notice and comment rule-making procedures of the APA.
 
 Id.
 
 at 877-78.
 

 In the instant action, the evidence demonstrates that prior to 1986 the fiscal interme
 
 *1465
 
 diaries determined on a case-by-case basis whether a service involving an investigational device was reasonable and necessary for treatment, and thus, covered under the Medicare Act. This determination was made by evaluating whether the use of the device was generally accepted by the medical community, or, if the device was rarely used, novel, or relatively unknown, whether there was authoritative evidence of the safety and effectiveness of the device. There is no evidence that pre-market approval of a medical device by the FDA was a necessary prerequisite for coverage under the Medicare Act.
 

 The 1986 Medicare manual instruction changed this policy. After the 1986 instruction the fiscal intermediaries were not permitted to examine the use of an investigational medical device on a ease-by-case basis to determine whether its use was reasonable and necessary for treatment. Instead, the instruction provides that all devices, including investigational devices, were categorically excluded from coverage if they were not approved for marketing by the FDA Thus, in the language of
 
 Linoz,
 
 instead of simply, clarifying the “necessary and reasonable” standard, the 1986 instruction carved out a per se exception for all investigational devices.
 

 The Secretary contends that “it has generally been the HCFA’s policy” that medical devices required to receive FDA approval before general marketing are not covered by Medicare unless they have been approved by the FDA. Hoyer Deck ¶4. This general policy, however, was not a per se rule excluding investigational devices from coverage. Further, it is evident that this policy was not a per se exclusion because the fiscal intermediaries regularly paid for services involving the use of an investigational device. The 1986 instruction, however, required the fiscal intermediaries to exclude from coverage all medical devices that were not approved for marketing by the FDA This created a per se exclusion for all investigational devices.
 

 Additionally, as in
 
 Linoz,
 
 the manual instruction at issue in this case is not one that “merely tracked” statutory requirements and “simply explained something the statute already required.” The Medicare Act neither requires nor specifically authorizes the Secretary to deny reimbursement for medical devices based upon FDA approval for marketing. The Medicare Act requires only that the services provided be reasonable and necessary for treatment. Thus, the Court finds that the 1986 instruction “withdrew coverage previously provided and thus ‘effect[ed] a change in existing law or policy.’”
 
 Linoz,
 
 800 F.2d at 877.
 

 Accordingly, the Court finds that the 1986 Medicare manual instruction is a substantive rule, and is subject to the notice and comment rule-making provisions of the APA It is undisputed that the Secretary did not comply with the notice and comment requirements of the APA in promulgating the 1986 instruction. Agency rules are invalid if the agency fails to comply with APA requirements.
 
 Linoz,
 
 800 F.2d at 878. The Court therefore finds, for the reasons stated herein, that Medicare Hospital Manual section 260.1, Medicare Intermediary Manual section 3151.1, and Medicare Carriers Manual section 2303.1, promulgated by the Secretary in July 1986, are invalid. Accordingly, the Court finds for the Plaintiffs, and each of them, and against the Defendant.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Class III devices developed prior to the 1976 Medical Device Amendments, and those developed after 1976 that are sufficiently similar to pre-1976 devices are exempt from pre-market approval by the FDA. Unless the FDA initiates review, such pre-1976 and similar devices are subject only to pre-market notification under section 510(k). 21 U.S.C. § 360e(b).
 

 [2]
 

 . Under 5 U.S.C. § 553(a)(2), rulemaking relating to public benefits is also exempt from these requirements. However, in 1971 the Secretary elected to waive the "benefits” exception to the APA. 39 Fed.Reg. 2532;
 
 Linoz,
 
 800 F.2d at 877 n. 7.